IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

KAYLAZARID VEGA-VALENTIN,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration

    Defendant.

Civil No. 09-1283 (BJM)

**OPINION AND ORDER**

Plaintiff Kaylazarid Vega-Valentin ("Vega") filed a complaint seeking reversal of the decision of the defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), that Vega was not disabled prior to December 31, 2005, under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). (Docket No. 1, p. 1-2). The Commissioner answered the complaint and filed a memorandum of law in support of his decision. (Docket No. 6, 9). Vega also filed a memorandum of law in support of her position. (Docket No. 15). The parties have agreed to have the case heard before me. (Docket No. 10). After careful review of the administrative record and the briefs on file, the Commissioner's decision is reversed.

**LEGAL STANDARD**

The court's review is limited to determining whether the Administrative Law Judge ("ALJ") employed the proper legal standards and found facts upon the proper quantum of evidence. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The court "must affirm the [Commissioner's] resolution, even if the record arguably

**Kaylazarid Vega-Valentín vs. Michael J. Astrue, Commissioner of Social Security**   Page 2
Civil No. 09-1283 (BJM)
**OPINION AND ORDER**

could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). The burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act ("Act"). See Bowen v. Yuckert, 482 U.S. 137, 146-47, n.5 (1987). A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[1] 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled. 20 C.F.R. §404.1520; see also Bowen, at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). In step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If he is, disability benefits are denied. 20 C.F.R. § 404.1520(b). If he is not, the ALJ proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. However, if the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in which it is determined whether the claimant has an impairment equivalent to a specific list of impairments

---

[1] The phrase "work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process calls for a determination of whether the claimant is able to perform other work in the national economy in view of the residual functional capacity ("RFC"), as well as age, education, and work experience. If the claimant cannot perform other work in the national economy, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

The claimant has the burden, under steps one through four, of proving that he cannot return to his former employment because of the alleged disability. Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).

**PROCEDURAL AND FACTUAL BACKGROUND**

Vega has one year of college education and previously worked as a seamstress, a maintenance worker, and a cook's assistant. (Tr. 157, 162). She claims to have been disabled since August 7, 2003, due to major depression, panic attacks, asthma, and high blood pressure. (Tr. 156). On December 31, 2005, Vega's Disability Insurance Benefits ("DIB") expired. At that time, she was thirty-five years old. (Tr. 150).

**Kaylazarid Vega-Valentín vs. Michael J. Astrue, Commissioner of Social Security**          Page 4
Civil No. 09-1283 (BJM)
**OPINION AND ORDER**

In regards to the history of her physical ailments, Vega's medical records reveal that she was diagnosed with bronchial asthma no later than June 2000. (Tr. 368). She was noted to have hypertension in a September 21, 2001 medical record. (Tr. 362). In 2007, during a hospital admission related to depression, an attending physician diagnosed Vega with arterial hypertension and bronchial asthma, but noted that both impairments were "controlled". (Tr. 422).

In regards to the history of her mental ailments, Vega had her first psychiatric evaluation on August 12, 2003.[2] (Tr. 437). In the evaluation, Vega stated that she had been depressed for the prior eight months and complained of anxiety, apathy, occasional crying and sadness, thoughts of death, insomnia, and decreased ability to concentrate. (Tr. 437-38). The record from that visit shows that Vega made reference to prior psychotherapeutic treatment. (Tr. 437). During a follow-up visit the next month, Vega reported continuing anxiety, but by October 14, 2003, her anxiety had decreased, and her medication was helping her sleep. (Tr. 434-35). Aside from an episode of heightened anxiety and depression in June 2004, Vega's medical records reveal a relatively stable condition from October 14, 2003 until the expiration of her DIB on December 31, 2005. (Tr. 150, 305, 427-28, 429, 432).

The record includes subsequent medical reports. (Tr. 274-450). However, these reports postdate the expiration of Vega's insured status and do not purport to describe her pre-January 2006 condition. Therefore, they do not need to be discussed. See Rivera-Figueroa v. Sec'y of Health & Human Servs., 858 F.2d 48, 51 (1st Cir. 1988).

Vega filed an application for DIB on November 17, 2006. (Tr. 145-49). On January 17, 2007, Disability Determination Services ("DDS") reviewed Vega's medical record to determine the extent of her mental impairment as well as her mental RFC. (Tr. 229-243). DDS psychiatrist Dr. Luis Umpierre submitted an assessment form in which he checked off a box stating that Vega had no

---

[2] In the briefs, both parties mention that Vega-Valentin was diagnosed at the August 12, 2003 psychiatric visit with single episode major depressive disorder, without psychotic features, and generalized anxiety disorder. (Docket No. 9, p. 3; 15, p. 2). However, no medical records are available to verify this information.

**Kaylazarid Vega-Valentín vs. Michael J. Astrue, Commissioner of Social Security**   Page 5
Civil No. 09-1283 (BJM)
**OPINION AND ORDER**

medically determinable impairment prior to the expiration of her DIB. (Tr. 228). Dr. Umpierre included neither written explanations nor a specific RFC assessment. (Tr. 229-242). Another DDS psychiatrist, Dr. Orlando Reboredo, reconsidered Vega's DIB application in April 2007 and affirmed the earlier assessment without additional comment. (Tr. 269). On February 21, 2007, DDS reviewed Vega's record to determine the extent of her physical impairments and to assess her physical RFC. (Tr. 265). DDS internist Dr. Vicente Sánchez determined that Vega had no significant limiting impairment prior to the expiration of her DIB. Again, the form contained neither written explanation nor a specific RFC assessment. (Tr. 264).

ALJ Rafael Colón held a hearing in regards to the denial of Vega's DIB application on August 25, 2008. (Tr. 73-107). At the hearing, Vega's husband, Uliberto Minguela Ortiz ("Ortiz"), testified that his wife had been in continuous treatment for her mental impairments since August 2003. (Tr. 76-7). Ortiz also testified that he had taken his wife to a psychiatric center in December 2005, the month that her DIB expired, after she cut both of her arms with a razor. (Tr. 79-80). Ortiz stated that the hospital he took her to had no beds and, consequently, he was forced to take Vega back home and care for her himself. (Tr. 80). Ortiz acknowledged that no written medical records were available to corroborate his account. (Tr. 80-81).

Dr. Feliciano Hernández, a psychiatrist who had reviewed Vega's medical records and spent 1.5 hours observing her, testified at the hearing as a medical expert. (Tr. 81-82). Dr. Hernández stated that, in his opinion, Vega had been continuously disabled since August 2003. (Tr. 91). In addition, Dr. Hernández testified that Vega's combination of mental impairments–insomnia, suicidal thoughts, and difficulty concentrating– met several of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 83, 88-91). The ALJ expressed skepticism that Dr. Hernández's assessment was based, at least in part, on Vega's hospitalizations, which occurred after her DIB expired. (Tr. 95). Vega's attorney argued that the hospitalizations should be taken into account because they were a "consequence" of the mental impairment that began in August 2003, and because they indicated that

**Kaylazarid Vega-Valentín vs. Michael J. Astrue, Commissioner of Social Security**  Page 6
Civil No. 09-1283 (BJM)
**OPINION AND ORDER**

there had been no improvement in Vega's condition since that time. (Tr. 97-98).

Finally, a Vocational Expert ("VE"), Miguel Pellecier, testified at the hearing. (Tr. 103-106). The ALJ asked the VE whether a person with similar characteristics to Vega, as well as a "medium level capacity", would be able to perform Vega's past relevant work. (Tr. 104). The VE opined that a person with those particular conditions would not be able to perform Vega's past relevant work. (Id.). But the VE noted that a person with those particular conditions could perform either of two unskilled jobs found in the national economy, wire-cutter or hand-labeler.[3] (Id.). The ALJ then asked the VE whether Vega could perform work in the national economy, assuming that the testimony of Dr. Hernández and Vega's husband was given "complete priority". (Tr. 105). In both of these situations, the VE testified that Vega would not be able to perform work in the national economy. (Id.). Finally, in response to a question posed by Vega's attorney, the VE testified that a person with a lack of concentration would not be able to adequately perform the job of a wire-cutter or a hand-labeler. (Tr. 106).

The ALJ issued his ruling on September 17, 2008. (Tr. 12-24). With regard to the five-step evaluation process, the ALJ determined: (1) that Vega had not engaged in substantial gainful activity since the alleged onset of disability; (2) that her major depressive disorder and generalized anxiety disorder were severe; (3) that her impairments did not meet or medically equal any of the listed impairments in Appendix 1 of the regulations; (4) that she was unable to perform any of her past relevant work; but (5) that Vega had the RFC to perform specific unskilled work on a sustained basis. Accordingly, the ALJ determined that Vega had not been disabled at any time from August 7, 2003, the alleged onset date, through December 31, 2005, the date last insured. (Tr. 24).

In assessing the medical evidence, the ALJ found that "as a result of the claimant's mental impairment, her daily activities were moderately restricted[,] and she had moderate difficulty in

---

[3]It is possible to interpret the VE's testimony as indicating that no jobs existed in the national economy that Vega could perform. (Tr. 104). However, since neither party raised this issue in their briefs, I will assume the VE indicated that jobs did exist in the national economy.

Case 3:09-cv-01283-BJM   Document 18   Filed 06/17/10   Page 7 of 10

**Kaylazarid Vega-Valentín vs. Michael J. Astrue, Commissioner of Social Security**     Page 7
Civil No. 09-1283 (BJM)
**OPINION AND ORDER**

maintaining social functioning". (Tr. 22). The ALJ found that "[t]hese limitations precluded the claimant, on a sustained basis, from performing only skilled mental activities, such as requiring the ability to understand, remember and carry out complex and detailed instructions, interact appropriately with the general public or tolerate intensive tension or work pressures". (Id.). From this information, the ALJ determined that Vega had the RFC to perform light work, but that "[her] ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations". (Tr. 24). The ALJ noted that "[t]o determine the extent to which these limitations erode the unskilled light occupational base", he asked the VE "whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and [RFC]". (Id.). After concluding that there were jobs in the national economy that Vega could perform, the ALJ held that "[t]he claimant was not under a disability as defined in the Social Security Act, at any time from August 7, 2003, the alleged onset date, through December 31, 2005, the date last insured". (Id.).

## DISCUSSION

The analysis in this case centers on the ALJ's determination at step five in the sequential evaluation process contained in 20 C.F.R. § 404.1520. The ALJ's findings with regard to steps one through four are not contested by Vega. Thus, the sole question before the court is whether the ALJ's determination at step five was based upon substantial evidence.

At step five, the ALJ used a VE to determine whether substantial gainful activity existed in the national economy that Vega could perform. The VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity. See Arocho v. Sec'y of Health and Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). In other words, a VE's testimony must be predicated on a supportable RFC assessment. See 20 C.F.R. § 404.1520(g)(1). An ALJ is not qualified to determine RFC on the basis of the raw medical evidence, but instead must look to a medical expert to do so. Berríos López v. Sec'y of Health & Human Servs., 951 F.2d 427, 430 (1st Cir. 1991) (per curiam); Rosado v. Sec'y of Health & Human Servs., 807 F.2d

292, 293 (1st Cir. 1986). Therefore, the only evidence the ALJ could have permissibly relied on to reach conclusions regarding Vega's RFC would have been medical records or expert medical testimony that discussed her impairments in functional terms.

Vega argues that the ALJ erred in his determination at step five because he based his assumptions of her functional limitations on an interpretation of raw medical evidence that went against the testimony of the testifying physician, Dr. Hernandez. (Docket No. 15, p. 12, 19-20). She further argues that the DDS forms denying her DIB claim were inadequate for the purposes of RFC assessment because they were submitted by non-examining, non-testifying physicians and were devoid of any written explanations as to their conclusions. (Docket No. 15, p. 12-13). A written report submitted by a non-examining, non-testifying physician necessarily limits the probative power of the report. Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 224 (1st Cir. 1981). However, such reports are entitled to *some* evidentiary weight, which "will vary with the circumstances, including the nature of the illness and the information provided the expert." Berríos López, 951 F.2d at 431 (citing Rodríguez, 647 F.2d at 223). Reports that list all of the claimant's alleged impairments along with medical conclusions as to the extent that each impairment limits the claimant's functional capacity will be afforded greater evidentiary weight. Berríos López, 951 F.2d at 431; see Quintana v. Comm'r of Soc. Sec., 110 Fed. Appx. 142, 144 (1st Cir. 2004). But reports submitted by non-examining physicians that merely contain short conclusory statements or the checking of boxes to indicate RFC are entitled to relatively little evidentiary weight. Berrios Lopez, 951 F.2d at 431; see Rivera-Torres v. Sec'y of Health & Human Servs., 837 F.2d 4, 6 (1st Cir. 1987) (per curiam).

Here, it appears that the forms should be given little evidentiary weight in the determination of Vega's functional limitations. The physician who assessed Vega's mental impairments only completed the first page of the fourteen-page form, in which he checked off a single box, indicating that Vega had no medically determinable impairment. (Tr. 229). The physician did not fill out the "Rating of Functional Limitations" on page eleven of the form, nor did he provide any explanation of his

**Kaylazarid Vega-Valentín vs. Michael J. Astrue, Commissioner of Social Security**  Page 9
Civil No. 09-1283 (BJM)
**OPINION AND ORDER**

conclusions in the "Consultant's Notes" section on page thirteen. (Tr. 239, 241). Similarly, the assessment of Vega's physical RFC, submitted by another non-examining, non-testifying physician, consisted of one page that merely stated "[o]bjective evidence do [sic] not support a significant limiting impairment by [Date Last Insured]". (Tr. 264).

None of the other medical findings in the record attempt to relate Vega's impairments to her functional limitations. Nevertheless, the ALJ found that Vega had the RFC to perform light work, which required the ability to "understand, remember and carry out simple instructions, use judgment in simple work related situations, respond appropriately to supervisor, co-workers[,] and usual work situations, deal with changes in a routine work setting, tolerate criticism and normal work production stress[,] and meet regular attendance and work production schedules". (Tr. 20-21). The ALJ is simply not permitted to make this sort of conclusion himself. Berríos López, 951 F.2d at 430; Rivera-Torres, 837 F.2d at 6-7; Rosado, 807 F.2d at 293; Perez Lugo v. Sec'y of Health & Human Servs., 794 F.2d 14, 15 (1st Cir. 1986).

Furthermore, the ALJ's RFC assessment is internally inconsistent. The ALJ presented the VE with a hypothetical question that assumed a "medium level capacity" yet his Findings of Fact report noted an "[RFC] to perform light work". (Tr. 20, 104). Because the VE's testimony is based on an inconsistent and unsubstantiated RFC assessment, it cannot form the basis of the ALJ's determination at step five. See Padilla v. Barnhart, 186 Fed. Appx. 19, 21 (1st Cir. 2006) ("If a [VE]'s testimony is to have any probative value, the hypothetical questions posed to the [VE] must contain the relevant facts."); Berríos López, 951 F.2d at 429; Rosado, 807 F.2d at 293; Arocho, 670 F.2d at 376 (remanding for lack of relevant VE testimony, commensurate with the claimant's particular capacities); Morales Colón v. Comm'r of Soc. Sec., 245 F. Supp. 2d 395, 400 (D.P.R. 2003) ("With a proper RFC assessment the medical evidence of record could support a possible finding of plaintiff being disabled or of not being disabled."). Without the VE testimony, the ALJ did not have substantial evidence at his disposal on which to predicate a finding of substantial gainful employment that Vega could perform in the

**Kaylazarid Vega-Valentin vs. Michael J. Astrue, Commissioner of Social Security**   Page 10
Civil No. 09-1283 (BJM)

national economy.

The Commissioner argues that the ALJ's assessment of Vega's RFC is "supported by the medical records chronicling [her] physical and psychiatric treatment". (Docket No. 9, p. 16). He cites Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983), for the proposition that an ALJ is entitled to rely on the absence of medical evidence in assessing a claimant's functional capacity. (Docket No. 9 p. 18). Dumas is distinguishable from the instant case insomuch as the record in Dumas included written explanations from three treating physicians as to how the claimant's impairments affected his functional capacity. 712 F.2d at 1548. The record in this case is devoid of any such explanation.

Under 42 U.S.C. § 405(g), a remand to the Commissioner is appropriate where "the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing". Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 139 (1st Cir. 1987) (internal citation omitted). Based on the foregoing, I find that there is insufficient evidence to support the ALJ's determination at step five of the analysis.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is **REVERSED** and the case is remanded to the Commissioner so that he may obtain and consider additional evidence regarding the extent of the claimant's residual functional capacity. Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 17th day of June, 2010.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge